UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. H-16-58S |
| § | |
| SONNY DEALEJANDRO, § | |
| Defendant. § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Stuart A. Burns, Assistant United States Attorney, and the defendant, Sonny Dealejandro ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Superseding Indictment. Count one charges defendant with conspiracy to possess with the intent to distribute cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The statutory maximum penalty for each violation of 21 U.S.C. " 846, 841(a)(1) & 841(b)(1)(A) (Count One), is up to life imprisonment and a fine of not

more than $10,000,000. Additionally, Defendant may receive a term of supervised release after imprisonment **of at least five** years. *See* Title 21, United States Code, sections 841(b)(1)(A). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied

admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, not oppose the forfeiture of assets contemplated in paragraph 17 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to the conspiracy to distribute controlled substances and money laundering. Defendant understands that such

information includes both state and federal offenses arising therefrom. In that regard:

    (a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

    (b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

    (c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

    (d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

    (e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

    (f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

### Waiver of Appeal and Collateral Review

7. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United

States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when

sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

10. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count One of the superseding indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

11. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of

6

Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be

imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

14. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be

drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

15. From January of 2012, thru September of 2016, DEA agents were investigating the drug activities of Sonny Dealejandro and Jose Fuente. Dealejandro and Fuente were suspected of large scale trafficking in controlled substances. Various investigative methods were used including the use of court authorized wire interception.

Sonny Dealejandro and Jose Fuente trafficked in cocaine and marijuana obtained from Mexico, and had these substances distributed throughout various areas of the United States. After the distribution, Dealejandro and Fuente would direct others to smuggle the proceeds, from the sale of their controlled substances, back to Mexico.

During the course of the conspiracy, Sonny Dealejandro and Jose Fuentes established numerous businesses in an effort to launder or legitimize their drug proceeds. The following is a list of businesses and trusts established by Sonny Dealejandro and Jose Fuente: *Mep Construction Services, LLC; Luxury Warehousing, LLC; Spring Homes, Inc., Creative Secure Investments, LLC; Warehouse Design Concepts, LLC; Eagle Drop, LLC, And Freeman Holdings Of Texas, LLC.* In Addition, Fuentes created trust companies, such As, *Jag-Alex Family Living Trust; Fuentes Family Living Trust; Sosa23318; and Sosa231318 Living Trusts.* During the period of the conspiracy charged in count one, over one million dollars of real estate property was purchased by Fuentes with proceeds of that conspiracy.

9

The investigation utilized several wire intercepts involving individuals who were directed to transport controlled substances and drug proceeds for Fuente and Dealejandro. One occasion was on or about March 28 and March 29, 2013. Calls intercepted on a federal court authorized wire intercept, between co-defendant, Armando Gonzales and others, indicated that Gonzales and Jose Antonio Villarreal, were preparing to make a trip, in separate trailers, to transport marijuana and cocaine for Dealejandro and Fuentes. They would be transporting these substances to several locations outside the state of Texas. Gonzales and Villarreal had been instructed by Dealejandro and Fuente to depart Houston that day, destined for Mississippi, Tennessee and Georgia.

In the early afternoon, Gonzales and Villarreal, driving separate trailers, went to a warehouse located at 15106 Chaplin street in Houston, Texas. Once there, their flatbed trailers were loaded with cocaine and marijuana secreted in wooden crates. They soon departed eastbound on Interstate highway 10.

The surveillance team followed Villarreal driving eastbound on Interstate 10 towards Beaumont. At approximately 3:40 p.m., Villarreal was stopped by a Jefferson County Sheriff's Office deputy for a traffic violation as he traveled eastbound on interstate 10 heading towards Beaumont. After receiving consent to search, the Deputy discovered over 400 pounds of marijuana inside the large wooden crate found on the flatbed trailer.

Gonzales, in his tractor trailer, slipped away from law enforcement and continued eastbound on Interstate 10. At approximately 6:58 p.m., Gonzales, still in

possession of his load of cocaine and marijuana, received a call from Villarreal indicating that he (Villarreal) had been arrested. Gonzales expressed concern to Villarreal because he thought law enforcement might be aware he was transporting both marijuana and cocaine on behalf of Fuente and Dealejandro. On a later phone call with Villarreal, Gonzales admits that he was transporting 50 kilograms of cocaine and 800 kilograms of marijuana for the Fuente and Dealejandro.

After hearing of Villarreal's arrest, a co-defendant, Rito Zertuche flew to Atlanta (where Gonzales had stopped) and assisted Gonzales in further covering up the controlled substances with a cover load of broken glass. Gonzales was able to complete his delivery of the 50 kilograms of the schedule II controlled substance cocaine and the 800 kilograms of the schedule I controlled substance marijuana. On a later date, Gonzales would transport the proceeds from the sale of the cocaine and marijuana back to the 15106 Chaplin street address.

During the course of the conspiracy Sonny Dealejandro and Jose Fuente possessed with the intent to distribute ~~over 5 tons or at least ($15,000,000.00) fifteen~~ million of dollars worth of cocaine throughout the United States.

**Breach of Plea Agreement**

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will

11

stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

21. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

22. Defendant admits that the following real properties, which are further described in the Superseding Indictment's Notice of Forfeiture (Doc. No. 39), were purchased with proceeds from the conspiracy charged in Count One, and that each

of these real properties, including any improvements and appurtenances, are subject to forfeiture and should be forfeited to the United States:

    A. The real property, including all improvements and appurtenances, located at 1122 Blackwood Avenue, Houston, Texas, 77032, and legally described as:

> LOT SIX (6), BLOCK ONE (1), ALDINE MEADOWS, A RESIDENTIAL SUBDIVISION IN HOUSTON, HARRIS COUNTY, TEXAS.

    B. The real property, including all improvements and appurtenances, located at 15106 Chaplin Street, Houston, Texas, 77032, and 1131 Blackwood Avenue, Houston, Texas, 77032, and legally described as:

> LOTS TWENTY-THREE (23), TWENTY-FOUR A (24A) AND TWENTY-FOUR B (24B), BLOCK TWO (2), ALDINE ESTATES, SECTION ONE (1), A SUBDIVISION IN THE UPSHAW SURVEY, A-821, HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN THE OFFICE OF THE COUNTY CLERK OF HARRIS COUNTY, TEXAS UNDER COUNTY CLERK'S FILE NUMBERS D395998 AND D517592.

    C. The real property, including all improvements and appurtenances, located at 7106 Crim Lily Court, Cypress, TX, 77433, and legally described as:

> LOT TWENTY-TWO (22), BLOCK ONE (1), CANYON VILLAGE AT CYPRESS SPRINGS, SECTION FIVE (5), a subdivision in Harris County, Texas, according to the Map or Plat thereof recorded in Film Cede Ne. 551124 et the Map Records of Harris County, Texas.

D. The real property, including all improvements and appurtenances, located at 10911 Decatur St., Willis, TX, 77318, consisting of three parcels and legally described as:

> Lot Two (2), in Block Five (5), of THE FRENCH QUARTER ON LAKE CONROE, SECTION THREE, a subdivision of Montgomery County, Texas according to the map or plat thereof recorded in Cabinet "Z", Sheet 1067, of the Map Records of Montgomery County, Texas.
>
> Lot 3, in Block Five 5, Final Plat of THE FRENCH QUARTER ON LAKE CONROE, SECTION THREE, a subdivision of Montgomery County, Texas, according to the map or plat thereof recorded in Cabinet "Z", Sheet 1067-1070, of the Map/Plat Records of Montgomery County, Texas.
>
> Lot Four (4), in Block Five (5), of THE FRENCH QUARTER ON LAKE CONROE, SECTION THREE, a subdivision of Montgomery County, Texas, according to the map or plat recorded in Cabinet "Z", Sheet 67, of the Map Records of Montgomery County, Texas.

23. Defendant admits that the following personal properties, which are listed in a supplemental notice of forfeiture (Doc. No. 115), are proceeds of, or were purchased with, proceeds of the conspiracy charged in Count One, and are subject to forfeiture and should be forfeited to the United States:

A. $2,437.00 in United States currency seized from Sonny DeAlejandro in Houston, Texas, on or about October 6, 2016;

B. A 2008 Revolution Spartan Motorhome (VIN: -- 2688) seized from Jose Luis Fuentes in Spring, Texas, on or about October 6, 2016;

C. A 1996 Freightliner FLD Tractor (VIN: -- 5221) seized from Jose Luis

15

    Fuentes in Spring, Texas, on or about October 6, 2016;

D. A 2008 Mercedes-Benz S550 (VIN: -- 7008) seized from Jose Luis Fuentes in Willis, Texas, on or about October 6, 2016;

E. A 36' Black Utility Box Trailer seized from Jose Luis Fuentes in Spring, Texas, on or about October 6, 2016; and

F. A 1957 Chevrolet Bel Air Sedan (VIN: -- 7894) seized from Jose Luis Fuentes in Willis, Texas, on or about October 6, 2016.

24. Defendant agrees to the forfeiture of all of the real and personal properties listed above in paragraphs 22 and 23. Defendant agrees that he will make no claim, directly or indirectly, to any of these properties and that he will make no claim to these properties on behalf of any entities that he organized, controls, or owns, including but not limited to, any limited liability companies, partnerships, and trusts. Defendant also agrees that he will assist the United States in the forfeiture of these properties and that he will not assist any third parties in asserting or supporting a claim or petition to the properties or in contesting the forfeiture of these properties. In addition to the properties listed in paragraphs 22 and 23, Defendant agrees that he either has no interest in or that he waives any and all interest he may have or could assert in any of the other properties listed in the Superseding Indictment's Notice of Forfeiture and the supplemental notice of forfeiture (Doc Nos. 39 and 115), and he agrees that he will not contest the forfeiture of such properties.

25. Defendant also admits that he obtained at least $15,000,000 in proceeds from the conspiracy and agrees to the imposition of a personal money judgment against him and in favor of the United States of America in that amount. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists. Defendant agrees to forfeit any of his property, or his interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

26. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

27. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

28. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

29. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject

to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

30. This written plea agreement, consisting of 20 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he is pleading guilty freely and voluntarily because he is guilty.

31. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at __Houston__, Texas, on __November 25__, 2019.

_____
Sonny Dealejandro, Defendant

Subscribed and sworn to before me on __November 25__, 2019.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____          _____
Stuart A. Burns                                      Cecil Starcher
Assistant United States Attorney          Attorney for Defendant
Southern District of Texas

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-16-58S |
| SONNY DEALEJANDRO, | § | |

**PLEA AGREEMENT – ADDENDUM**

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     _11/25/19_____
Cecil Starcher                                         Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____     _11/25/19_____
Sonny Dealejandro, Defendant                Date

20